UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | CASE NO. 1:08-cr-165-DFH-KPF |
| DINA WEIN REIS, a/k/a Dina Wein, | ) | -01 |
| a/k/a Dina Reis, a/k/a Dee, a/k/a | ) | |
| Dee Hammond, a/k/a Dee Toro, | ) | |
| SHERYL RAPORT, a/k/a Sheryl Keness, | ) | -02 |
| SUZANNE CARRICO, | ) | -03 |
| SARAH GOLDEN, a/k/a Sarah Ribler, | ) | -04 |
| CHAYA COOPER, and | ) | -05 |
| STEVE MANENTI, | ) | -06 |
| | ) | |
| Defendants. | ) | |

ENTRY ON PENDING MOTIONS

A grand jury in the Southern District of Indiana issued an indictment and then a superseding indictment against the six defendants alleging that they conspired to commit wire fraud and six counts of wire fraud in the course of a long-term nationwide scheme to defraud numerous businesses. Pursuant to Rule 21(b) of the Federal Rules of Criminal Procedure, defendant Dina Wein Reis has filed a motion to transfer this case to the Southern District of New York. Four of the five co-defendants (all but Sarah Golden) have joined this motion. The court denies the motion to transfer the case to the Southern District of New York.

The parties agree that venue is proper and permissible in the Southern District of Indiana, where two of the six victims of the fraud alleged in the original indictment were located.  The issue, all parties agree, is whether the court should exercise its discretion under Rule 21(b) to move the case to New York.  Rule 21(b) permits the court to transfer a criminal case – or certain counts of the case – to another district "for the convenience of the parties and witnesses and in the interest of justice."  Five of the six defendants live in the New York region, and the alleged fraudulent scheme was developed in New York City and directed from there.  The government responds that the alleged victims are located across the country, and there are more in Indiana than in any other state, at least according to the original and superseding indictments.

In the Supreme Court's leading case under Rule 21(b), an antitrust prosecution of a major corporation, the district court had identified ten factors to consider when deciding a Rule 21(b) motion.  The factors are:

    (1)    location of corporate defendant;

    (2)    location of possible witnesses;

    (3)    location of events likely to be in issue;

    (4)    location of documents and records likely to be involved;

    (5)    disruption of defendant's business unless the case is transferred;

    (6)    expense to the parties;

    (7)    location of counsel;

      (8)     relative accessibility of place of trial;

      (9)     docket condition of each district or division involved; and

      (10)    any other special elements which might affect the transfer.

*Platt v. Minnesota Mining & Manufacturing Co.*, 376 U.S. 240, 243-44 (1964). These "*Platt* factors" were articulated in the context of a prosecution of a major corporation under antitrust laws. Since *Platt* was decided, these factors have been adopted and adapted to help guide district courts' discretion under Rule 21(b). See *United States v. Morrison*, 946 F.2d 484, 489 & n.1 (7th Cir. 1991) (applying *Platt* factors). The court must weigh all of the factors, and no one factor is dispositive. *Id.* The court should grant the motion if "all relevant things considered, the case would be better off transferred to another district." *In re Balsimo*, 68 F.3d 185, 187 (7th Cir. 1995) (ordering district court to reconsider denial of transfer because it applied an incorrect legal standard).

      The original indictment described a scheme to defraud using interstate wire communications. The indictment alleged that many large manufacturers of consumer products occasionally sell a portion of their product at substantial discounts to legitimate charitable organizations or other not-for-profit organizations, to programs that market and promote the manufacturers' products, or for sale abroad. In general terms, the indictment alleged that defendants carried out a scheme in which they falsely told manufacturers that they wanted to buy products for these purposes, persuaded the manufacturers to sell products

-3-

at deeply discounted prices, and then enriched themselves by simply selling the products for ordinary purposes, not those special purposes they had represented to obtain the discounts. The original indictment identified six victims, ranging from May 2003 to 2008. Of those six victims, two were located in Indiana. The others were in Connecticut, Missouri, Kentucky, and New Jersey. The original indictment also identified six specific wire communications that were alleged to have been violations of 18 U.S.C. § 1343, the wire fraud statutes. All six of those communications were from New York to Indiana.

The superseding indictment has added five more victims to the list in the conspiracy charge, going back to 1993 to 1999. Of those five victims, one was in Pennsylvania, one in California, one in Indiana, and two in Maryland. The superseding indictment alleged six counts of wire fraud based on the same six communications from New York to Indiana. The government's disclosure of pretrial discovery includes information related to many other victims located all over the United States, beyond the eleven victims identified in the superseding indictment.

I.   *Location of the Defendants*

The first *Platt* factor was the location of the corporate defendant, but courts have interpreted it to include the residences of individual defendants. See *United States v. Radley*, 558 F. Supp. 2d 865, 877 (N.D. Ill. 2008). Reis resides in the

Southern District of New York. Carrico, Golden, and Cooper reside in the Southern District of New York, Raport resides in New Jersey, and Manenti in Chicago.[1] Reis and her friends and relatives argue that her extended absence from New York will disrupt others' lives. The government responds that Reis' substantial travel history shows that being away from New York City is not highly disruptive to her.

Reis is an experienced traveler, but she and her family certainly will be inconvenienced if she has to defend major criminal charges more than 600 miles from her home. Most of the other defendants live in or near the Southern District of New York, and they too will be inconvenienced if this case proceeds in Indianapolis. The first *Platt* factor does not merit transfer on its own. See *United States v. Jordan*, 223 F.3d 676 (7th Cir. 2000) (affirming district court's denial of transfer even though defendant resided in transferee district); *United States v. Zylstra*, 713 F.2d 1332, 1336 (7th Cir. 1983) (affirming denial of transfer: "Criminal defendants have no constitutional right to have a trial in their home districts, nor does the location of the defendant's home have 'independent significance in determining whether transfer to that district would be in the interest of justice.' "), quoting *United States v. McManus*, 535 F.2d 460, 463 (8th Cir. 1976), quoting in turn *Platt*, 376 U.S. at 245-46. In this case, nevertheless, the factor weighs in favor of transfer. See *Radley*, 558 F. Supp. 2d at 877 (factor

---

[1] See Dkt. No. 144, Cooper Aff.; Dkt. No. 145 (Raport); Dkt. No. 148 (Manenti); Dkt. No. 172 (Carrico).

weighs heavily in favor of transfer when three of four defendants reside in transferee district and have family and social connections in the transferee district).

II.     *Location of Possible Witnesses*

The parties dispute where most of the witnesses are located. Reis contends that the government has identified possible witnesses for trial and that most of those witnesses reside in the New York area. She also contends that other individuals identified in government documents (suggesting that they may be witnesses) reside in the New York area. Finally, she contends that character witnesses who may offer evidence important to the defendants' knowledge and intent are located in the New York area. The government, on the other hand, focuses on the alleged victims and their employees. None of the victims are in New York and some are in Indiana. In fact, more of the victims identified in the indictment are in Indiana than in any other state.

At this stage in the case, it is difficult to determine where possible witnesses are located. However, Reis and the other defendants allegedly conceived and operated this fraud in New York. Their actions, knowledge, and intent during the time that they allegedly conceived and operated the fraud will be important issues at trial. These facts tend to weigh in favor of transfer. See *Radley*, 558 F. Supp. 2d at 879; *United States v. Alter*, 81 F.R.D. 524, 526 (S.D.N.Y. 1979) (granting

transfer where "nerve center" of fraud was in transferee district and many witness required to "establish the alleged fraudulent conduct reside or are located in" the transferee district and noting that witnesses who live in neither transferring nor transferee district "will be inconvenienced no matter where the case is tried").

But victims of the alleged fraud will also be called to testify. This fact does not necessarily weigh against transfer because of the wide scope of the alleged fraud. See *United States v. Ringer*, 651 F. Supp. 636, 637-38 (N.D. Ill. 1986) (granting transfer and refusing to give weight to location of victim witnesses when the victims were spread out in many states). However, the fact that the indictment identifies more victims in the Southern District of Indiana than in any other state tends to weigh against a transfer. The fact that all of the charged wire communications were from New York to Indiana tends to weigh in favor of Indiana, where the charges are concentrated. The location of witnesses factor ultimately weighs out in favor of transfer, though not overwhelmingly so.

III.   *Location of Events Likely To Be In Issue*

The parties agree where most of the alleged conduct took place, but their characterizations of the focal point of the conduct differ. Reis argues that the "nerve center" of the alleged scheme was in New York. Reis' business was in New York, four defendants resided in New York, and many allegedly criminal activities occurred in New York. See *Alter*, 81 F.R.D. at 525-26 (granting transfer when

transferee district was "nerve center" of fraud even though defendant's employees in transferee district contacted victims in many states and defendant's company operated an office in transferring district); *Ringer*, 651 F. Supp. at 638 (granting transfer to New York from Illinois when government alleged a nationwide conspiracy carried out from New York and "the only unique nexus to Chicago involved the receipt from and matching of five purchase orders").

The government argues that New York was merely the physical home of Reis and some of her co-defendants, while the fraudulent conduct took place in many target states, nationwide, with no victims in New York. As noted, the indictment identifies more victims in Indiana than elsewhere, and the charged wire communications were all from New York to Indiana. See *United States v. Spy Factory, Inc.*, 951 F. Supp. 450, 457 (S.D.N.Y. 1997) (refusing to transfer from New York to Texas and finding that third *Platt* factor was neutral even though defendants resided in Texas and defendant corporation was headquartered in Texas and had no location in New York because "the criminal activity that was alleged to have occurred in this case was concededly national in scope"); see also *United States v. Green*, 983 F.2d 100, 103 (8th Cir. 1992) (affirming denial of transfer from Minnesota when defendant was charged with making a threatening phone call from New York to Minnesota).

Events that could be in issue at trial occurred in many states. The Southern District of New York was the nerve center of the alleged scheme, but the

-8-

scheme reached out to victims in many states over many years. New York is the district where most events occurred, but Indiana ranks second because of the way the charges have been stated, focusing on victims in Indiana. The third *Platt* factor also tends to weigh in favor of transfer, but again, not overwhelmingly so.

IV.     *Location of Documents and Records Likely To Be Involved*

Most of the relevant documents in this case have been shipped to Indiana from many locations, including New York. The government ran its investigation of the alleged nationwide fraud scheme from offices in Indiana and gathered evidence here from many victims. The government also executed search warrants in New York, seized many records under the defendants' control, and shipped those records to Indiana.

It is clear that the government cannot strengthen its case for venue by shipping the defendants' documents from their residences to the government's preferred venue. See *Ringer*, 651 F. Supp. at 638, quoting *United States v. Bein*, 539 F. Supp. 72, 74 (N.D. Ill. 1983). But the government has developed, investigated, and collected its case here, including the collection of evidence from victims. At the same time, if the case were to be transferred for other reasons, it would be possible to move the evidence to another venue. The fourth *Platt* factor weighs against transfer here, though not decisively so.

V.     *Disruption of Defendant's Business*

In *Platt*, the defendant was a major corporation. The parties in this case agree that this factor is neutral here.

VI.    *Expense to the Parties*

Each side argues that it will incur extra and unnecessary costs if this case is not tried in its preferred venue. The defendants who live in the New York area will have to travel to Indiana before and during the trial if the case stays in this district. The Assistant United States Attorney in Indianapolis who is leading the prosecution of this case and other government agents in Indianapolis will have to travel to New York for trial if the case is transferred. Most counsel for defendants reside and work in Indiana. (The exceptions are one firm of the two firms that represent Reis – the New York office of Wilson Sonsini – and the recent addition of a Chicago law firm for defendant Chaya Cooper, who had been represented until August 2009 by the Federal Community Defender in Indiana.)

The court cannot determine with any precision the impact of the extra expenses that the parties will incur if the case is transferred or remains in this district. Reis had substantial assets before the case began, but it is not clear how many of her assets remain after the government's seizures. Similarly, it is not clear how many assets her co-defendants have. Three of the co-defendants are

represented by a CJA appointment, but defendants may incur additional expenses if the case is transferred after it has progressed for several months in Indiana.

The government likely will incur more expenses if this case is transferred to New York. District courts have disagreed about whether and how much weight to give to the government's expenses. Compare *United States v. Spy Factory, Inc.*, 951 F. Supp. 450, 459 (S.D.N.Y. 1997) (government's expenses weigh against transfer), with *United States v. Coffee*, 113 F. Supp. 2d 751, 757 (E.D. Pa. 2000) ("The United States of America has, for all practical purposes, unlimited financial resources to bring to bear. Unlike the [defendants], the Government can, and does, mint money."). Although the government does indeed have the power to mint money, this blithe approach to the issue does not take into account the practical realities of limited government resources and tight budgets. See *United States v. Ringer*, 651 F. Supp. at 639-40 (granting transfer but declining to disregard government's costs in view of limited resources). This is an expensive case so far. It will be an expensive case to try in Indiana or in New York. The cost factor is neutral here.

VII.   *Location of Counsel*

Most of the attorneys in this case are located in Indiana. Government attorneys from Indianapolis and Washington, D.C., have filed appearances. Reis has retained counsel in New York and Indiana. Her brief states that she expects her legal team to remain intact regardless of the resolution of this motion. One defendant, Sarah Golden, also has retained counsel in New York and Indiana, but she does not seek transfer. Three other defendants have only Indiana counsel, including two by CJA appointment. The last defendant had been represented by the Federal Community Defender in Indiana but recently hired a Chicago law firm. This factor weighs against transfer.

VIII.   *Relative Accessibility of Place of Trial*

Indianapolis and New York are both major metropolitan areas with major airports. Both are readily accessible to attorneys or witnesses who may need to travel. See *United States v. Radley*, 558 F. Supp. 2d 865, 882 (N.D. Ill. 2008) (noting that Chicago and Houston are equally accessible). This factor is neutral.

IX.   *Docket Condition of Each District or Division Involved*

Both sides agree that this factor is neutral because of the Speedy Trial Act.

X.     *Other Special Factors*

The government argues that this is the "most significant factor in this case" because Reis allegedly defrauded victims in districts across the country, including this district, and should not be able to take advantage of venue in her home district, where none of the alleged victims are located. The government also cautions against transferring Reis' case to New York while leaving the remaining defendants' cases in Indiana.

The government relies on *United States v. Morrison*, 946 F.2d 484 (7th Cir. 1991). In that case, defendants were charged with distributing drugs from Puerto Rico to points in the U.S. mainland, including Chicago and Milwaukee. As a district judge, Judge Evans denied transfer for one of the Puerto Rican defendants. After establishing its deferential standard of review of a district court's Rule 21(b) determination, the Seventh Circuit affirmed. The court noted that the defendant and his witnesses resided in Puerto Rico and that his participation in the drug ring occurred in Puerto Rico. However, because the defendant was tried with five co-defendants whose cases would not have been transferred, the court could "not say that the facts 'compelled' the transfer" of the defendant's trial. *Id.* at 489-90. *Morrison* does not offer much support for the government's position because five of the six defendants in this case have requested transfer. In this situation, the court could exercise its discretion to transfer the entire case.

The court finds more persuasive the observation in *United States v. Reed*, 773 F.2d 477, 482 (2d Cir. 1985), where the Second Circuit observed that "places that suffer the effects of a crime are entitled to consideration for venue purposes. Such districts have an obvious contact with the litigation in their interest in preventing such effects from occurring." The factual context of *Reed* was quite different, but the observation is surely correct. Defendants in fraud cases are not always entitled to have the trial close to the "nerve center" of the alleged fraudulent scheme. In this case, both the original and superseding indictments charged incidents of fraud with more victims in Indiana than in any other state. Both indictments charged as acts of wire fraud only communications between New York and Indiana. This district has already been the location of civil litigation against defendants Reis, Golden, and Cooper, by one of the victims identified in the indictment, see *Roche Diagnostics Corp. v. Reis, et al.*, 1:07-cv-34 (S.D. Ind.), and has been the origin and center of the government's investigation. These circumstances tend to weigh against transfer.

XI.   *Conclusion*

One of the *Platt* factors (location of the defendants) definitely weighs in favor of transfer, and two others (location of witnesses and location of events at issue) lean somewhat in that direction. Three factors (location of records, location of counsel, and other special factors) tend to weigh against transfer. The other factors are either neutral or close to neutral. The court is not suggesting that this

is a math problem or that the answer should be derived by counting factors. Any ten-factor test is likely to present some real challenges in finding a common denominator for weighing incommensurable factors against one another. After weighing the factors as described above, the court concludes that the moving defendants have not shown a strong case for transfer. The court cannot say that, all things considered, "the case would be better off" if it were transferred to the Southern District of New York. See *In re Balsimo*, 68 F.3d at 187 (stating the applicable standard). The court denies transfer under those circumstances.

So ordered.

Date: October 8, 2009

*David F. Hamilton*

DAVID F. HAMILTON, CHIEF JUDGE
United States District Court
Southern District of Indiana

Copies to:

Winfield D. Ong
UNITED STATES ATTORNEY'S OFFICE
winfield.ong@usdoj.gov

Joe Vaughn
UNITED STATES ATTORNEY'S OFFICE
joe.vaughn@usdoj.gov

Matthew A. Klecka
U.S. Department of Justice
Matthew.Klecka@usdoj.gov

J. Richard Kiefer
Bingham McHale
jrkiefer@binghammchale.com

James J. Bell

Bingham McHale
jbell@binghammchale.com

Michael S. Sommer
WILSON SONSINI GOODRICH & ROSATI
msommer@wsgr.com

James H. Voyles
Voyles Zahn Paul Hogan & Merriman
jvoyles@vzphmlaw.com

Thomas A. Brodnik
Stark Doninger & Smith
tbrodnik@sdsfirm.com

Joseph DiBlasi
590 Madison Avenue, Suite 3500
New York City, NY 10022

Robert W. Hammerle
Hammerle & Allen
hammerleandallen@ameritech.net

Jeffrey B. Steinback
jbs.law@comcast.net

Rachel A. Katz
53 West Jackson Boulevard
Suite 1454
Chicago, Illinois  60604

Jeffrey Allen Baldwin
Baldwin Dakich & Maxwell
jbaldwin@iquest.net

U.S. Marshal Service

U.S. Probation Office